UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THERESE L. LESHER,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF ANDERSON, a municipal corporation; CITY OF ANDERSON POLICE SERGEANT SEAN MILLER, individually; CITY OF ANDERSON POLICE OFFICERS JEFFREY MILEY, individually, and KAMERON LEE, individually, and DOES 1-50, jointly and severally,<br><br>    Defendants. | No. 2:21-cv-00386-WBS-DMC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Therese Lesher ("plaintiff") brought this action against the City of Anderson ("Anderson"), Anderson Police Sergeant Sean Miller, Anderson Police Officers Jeffrey Miley, Kameron Lee, and DOES 1-50 seeking damages against defendants for violation of the First and Fourth Amendment under 42 U.S.C. § 1983, municipal and supervisory liability under 42 U.S.C. § 1983,

violation of the Tom Bane Civil Rights Act, Cal. Civil Code § 52.1, malicious prosecution, violation of Article 1, § 13 of the California Constitution, assault and battery, false arrest and imprisonment, and negligence.

Defendants now move to dismiss plaintiff's first cause of action for violation of the First Amendment under 42 U.S.C. § 1983, second cause of action for municipal liability under 42 U.S.C. § 1983, and fifth cause of action for violation of Article 1, § 13 of the California Constitution. (See "Mot. to Dismiss" (Docket No. 11).)

I. Factual and Procedural Background

On or about August 13, 2019, at approximately 12:30 A.M., plaintiff was sitting on the porch of her apartment building talking with her cousin, Denhene Leach, and two other persons, accompanied by Ms. Leach's dog. (See Compl. at ¶ 17.) (Docket No. 1.) Several Anderson Police Department vehicles pulled into the parking lot in front of the building without lights or sirens. (See id. at ¶ 18.) Unbeknownst to plaintiff and her group, another tenant of the apartment complex had called in a noise complaint to the Anderson Police Department. (See id.) Ms. Leach's dog left the porch and walked in the direction of the officers, who had exited their patrol vehicles. (See id. at ¶ 19.) Suddenly, one of the officers yelled that he had allegedly been bitten by Ms. Leach's dog. (See id.) The dog was then retrieved and taken into Ms. Leach's apartment. (See id.)

Plaintiff's dog, which was locked in her vehicle, began barking. (See id. at ¶ 20.) Plaintiff went to her car to calm down her dog and ensure that it stayed in her vehicle. (See id.)

As she approached her vehicle, defendant Anderson Police Officer Jeffrey Miley yelled for her to control her dog. (See id.) He told her that he would pepper spray the dog or shoot it if plaintiff did not control her dog's barking. (See id.) In response, plaintiff reached into the partially open rear window of the vehicle and grabbed hold of her dog's harness. (See id.)

Plaintiff disapproved of the way the officers were performing their duties in their interactions with her and Ms. Leach. (See id. at ¶ 21.) Accordingly, she criticized the defendants, including Officer Miley and Sergeant Miller, and expressed her disapproval as to the way they were conducting themselves. (See id.) Without any warning whatsoever, plaintiff was then thrown against the side of her vehicle, subjected to various uses of force, and handcuffed by Sergeant Miller and Officers Miley and Lee. (See id. at ¶ 22.)

Plaintiff was searched, arrested, and her personal property was removed from her person. (See id.) She was transported to the Shasta County Jail and booked by defendants for alleged violations of California Penal Code § 69 (using threats or violence to prevent executive officers from performing their duties or resisting executive officers in the performance of their duties), California Penal Code § 647(f) (being so intoxicated in a public place that one is unable to care for their own safety or the safety of others), and California Penal Code § 148(a)(1) (resisting, delaying, or obstructing a law enforcement officer). (See id.) Plaintiff contends that she was cooperative, spoke calmly, and obeyed the officers' commands at all material times. (See id.) Plaintiff sustained an injury to

her left forearm, a clavicle fracture, and a left finger fracture. (See id. at ¶ 26.)

Plaintiff's arrest was made the subject of a criminal prosecution in Shasta County, California for three misdemeanor counts of a violation of California Penal Code § 148(a)(1). (See id. at ¶ 24.) Plaintiff alleges that Sergeant Miller and Officers Lee and Miley deliberately and knowingly misrepresented the facts of the incident and/or the behavior of the plaintiff in their reporting of the incident. (See id.) These alleged misrepresentations were provided to the Shasta County District Attorney's Office with the knowledge and purpose of causing plaintiff to defend herself against criminal charges in order to cover up their own criminal acts. (See id. at ¶ 24.) On September 24, 2020, plaintiff was ultimately acquitted on all three charged counts after a jury trial. (See id. at ¶ 25.)

II. Discussion

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice." Id.  Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

   A.   First Amendment Retaliation Claim

   To bring a First Amendment retaliation claim under § 1983, a plaintiff must allege that (1) she engaged in a constitutionally protected activity; (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct - i.e., that there was a nexus between the defendant's actions and an intent to chill speech. See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016) (internal citations omitted).  To prevail on such a claim, a plaintiff need only show that the defendant intended to interfere with the plaintiff's First Amendment rights and that she suffered some injury as a result; the plaintiff is not required to demonstrate that her speech was actually suppressed or inhibited. See id.

   The court concludes that plaintiff has adequately pled a claim of First Amendment retaliation.  Plaintiff has clearly alleged that she "disapproved of the way" that the officers were performing their duties, "criticized the defendants", and "expressed her disapproval of the way that they were conducting themselves."[1]  (See Compl. at ¶ 21.)  Defendants have cited no

---

[1] Defendants argue in their reply that plaintiff's complaint merely alleges that she voiced her disapproval of defendants' conduct during her arrest rather than before her arrest. (See Reply in Supp. of Mot. to Dismiss at 3.) (Docket No. 14.)  However, the complaint actually states that plaintiff expressed her disapproval of the police officers and was

5

authority for their contention that plaintiff must specify exactly what she said in criticism of defendants in her complaint, and the court does not find that such specifics are necessary at this stage of the pleadings. Accordingly, the court concludes that plaintiff has sufficiently pled that she was engaged in a constitutionally protected activity.

Defendants also contend that plaintiff has not alleged that her criticism was "a substantial motivating factor" in defendants' conduct. (See Mot. to Dismiss at 8.) However, "a plaintiff may establish motive using direct or circumstantial evidence" and may "rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false." See Ariz. Students' Ass'n, 824 F.3d at 871 (internal citations omitted). "At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." See id. Here, plaintiff's complaint alleges that she criticized the defendant police officers for their conduct and then, without any warning whatsoever, was thrown against her vehicle and handcuffed. (See Compl. at ¶¶ 21-22.) The close temporal proximity between plaintiff's exercise of free speech and the alleged retaliatory conduct are sufficient at this stage in the pleadings to allege that plaintiff's exercise of free speech was a substantial motivating factor in defendants' conduct.

---

subsequently arrested in retaliation for her speech. (See Compl. at ¶¶ 21-22.)

6

Defendants additionally argue that plaintiff's first cause of action violates the rule against "shotgun" pleading in that multiple claims -- here, plaintiff's First Amendment retaliation claim and Fourth Amendment excessive force claim under 42 U.S.C. § 1983 -- are lumped together in one cause of action. (See Mot. to Dismiss at 3.) "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible to make informed responses to the plaintiff's allegations." See McLaughlin v. Castro, Case No. 1:17-cv-001597 DAD MJS, 2018 WL 1726630, at *4 (E.D. Cal. Apr. 10, 2018). Although the court does not think it is impossible for defendants to make informed responses to plaintiff's allegations, the court agrees that the inclusion of two claims in one cause of action requires repleading of these claims in separate causes of action. Because the court will grant plaintiff leave to amend her complaint, plaintiff is instructed to separate these claims into two separate causes of action in the next iteration of her complaint.

B.  Claims Against the City of Anderson[2]

Because § 1983 does not provide for vicarious

---

[2] Although defendants believed that plaintiff also alleged a Monell claim against Sergeant Miller, plaintiff clarifies in her opposition that she only wishes to sue Sergeant Miller for supervisorial liability under 42 U.S.C. § 1983. (See Opp'n to Mot. to Dismiss at 9.) As with her first claim, plaintiff has lumped both her claims for municipal liability and supervisory liability together into one cause of action. This inclusion of two claims in one cause of action once again makes it difficult to understand what factual allegations support which claim. The court will grant leave to amend and instructs plaintiff to plead her supervisory liability claim against Sergeant Miller in a separate cause of action in the next iteration of her complaint.

7

liability, local governments "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. A Monell claim lies where "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 406 (1997).

To survive a motion to dismiss, a plaintiff must do more than simply assert that a Monell defendant "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged in the complaint. See AE ex. rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012). Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e., excessive force) is insufficient. See id.

1. Unconstitutional Custom or Policy

For an unwritten policy or custom to form the basis of a Monell claim, it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. See Monell, 436 U.S. at 691. In pleading such a claim, the complaint must "put forth additional facts regarding the specific nature of [the] alleged policy, custom, or practice." See AE ex. rel.

Hernandez, 666 F.3d at 637.

Plaintiff alleges that Anderson maintains ten unlawful customs or practices. (See Compl. at ¶ 41.) However, plaintiff has alleged no facts in their complaint regarding an unconstitutional policy, custom or practice, allegations of prior incidents, or facts which demonstrate that the alleged practices were of "sufficient duration, frequency, and consistency such that the alleged custom or practice has become a traditional method of carrying out policy." See Harper v. Cnty. Of Merced, 1:18-cv-005620 LJO SKO, 2018 WL 5880786, at *6 (E.D. Cal. Nov. 8, 2018). Instead, plaintiff merely relies on boilerplate conclusions of customs, practices, and policies which state, without any supporting factual allegations, that Anderson fails to supervise and/or discipline officers for their misconduct, uses or tolerates excessive or unjustified force, and fails to institute adequate training policies in response to 9-1-1 calls, among other policies. (See Compl. at ¶ 41.)

Plaintiff argues that she was subjected to excessive force and then falsely charged by the arresting officers, which conforms to the policies and practices alleged in her complaint such as excessive force and "hurt a person, charge a person." (See Opp'n to Mot. to Dismiss at 10.) However, district courts have routinely found that a Monell claim is insufficiently pled where plaintiff merely alleges that the defendant has a policy or custom of performing various wrongs alleged elsewhere in her complaint. See Bagley v. City of Sunnyvale, Case No. 16-cv-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017) (holding that plaintiff did not adequately plead a Monell claim

where plaintiff essentially alleged that the city had an "official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint.); see also Mendy v. City of Fremont, No. C-13-4180 MMC, 2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (holding that an allegation that a county maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs that plaintiff alleged elsewhere in the complaint were insufficient to state a municipal liability claim.) Plaintiff's allegations are therefore insufficient to state a plausible, not merely possible, claim for relief. See AE ex rel. Hernandez, 666 F.3d at 637.

### 2. Ratification

The Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996). Ratification "generally requires more than acquiescence." Sheehan v. City and Cnty. of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014) (overruled on other grounds by City and Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 1767–1778 (2015)). Plaintiff's complaint talks about ratification generally, stating that Anderson ratified the ten allegedly unconstituional customs, policies, or practices. (See Compl. at ¶¶ 41, 43, 47.) However, the complaint does not include any factual allegations regarding any approval or ratification by Anderson of the allegedly unconstitutional actions or the basis for such approval. Such conclusory pleading, absent any

supporting factual allegations, does not sufficiently state a Monell claim. See Hicks v. Cnty. of Stanislaus, Case No. 1:17-cv-01187 LJO SAB, 2018 WL 347790, at *6 (dismissing a ratification claim where the complaint contained no factual allegations to support the claim that the County "approved, ratified, condoned, encourage, sought to cover up, and/or tacitly authorized" the conduct of the police unit.) The plaintiff here has therefore failed to state a cognizable claim of ratification under Monell.

### 3. Failure to Train

In order to state a claim for failure to train under Monell, a plaintiff must show that: (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the officials have been deliberately indifferent to the rights of the persons with whom the police come into contact; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).

Here, plaintiff has not provided any factual allegations as to (1) how Anderson's officer training is inadequate, (2) how the officials have been deliberately indifferent to the rights of Anderson citizens, or (3) how the inadequacy of the training actually caused the alleged deprivation of plaintiff's constitutional rights. See Merritt, 875 F.2d at 770. Accordingly, plaintiff has failed to state a

cognizable claim of failure to train under Monell.³ Because the complaint fails to state a Monell claim under any theory, the court will dismiss the complaint's second cause of action against Anderson.

    C.    <u>Article I, Section 13 of the California Constitution</u>

        The California Supreme Court has not decided whether there is a private cause of action for damages under Article I, Section 13, which protects against unreasonable searches and seizures. See <u>Julian v. Mission Cmty. Hosp.</u>, 11 Cal. App. 5th 360, 393 (2d. Dist. 2017). The majority of federal district court decisions of which this court is aware appear to have concluded that there is no private cause of action for damages under this provision of the California Constitution. See <u>Autotek v. Cnty. of Sacramento</u>, No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923, at *9 (E.D. Cal. July 25, 2017) ("California Constitution Article I, Section 13, upon which this claim rests, does not confer a private right of action for damages."); <u>Manning v. City of Rohnert Park</u>, No. C 06-0345 SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007) ("Neither the plain language of Article I, Section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation."). However, as emphasized in <u>Estate of Sanchez v. Cnty. of</u>

---

    ³    Moreover, if a Monell claim is predicated on an assertion of inadequate training with respect to the use of excessive force, "[m]ere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability." See <u>Merritt</u>, 875 F. 2d at 770. Plaintiff concedes that she has not alleged a pattern involving specific other cases or instances. (See Opp'n to Mot. to Dismiss at 12.)

12

Stanislaus, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, at *9 (E.D. Cal. Apr. 18, 2019), in order to determine whether the California Constitution provides for a private right of action, the court and the litigants must engage in the analysis set forth by the California Supreme Court in Katzberg v. Regents of the University of California, 29 Cal. 4th 300, 317 (2002).

The Katzberg analysis employs a two step approach. First, the court must "inquire whether there is evidence from which we may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation." See id. In undertaking this inquiry, the court "shall consider the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." See id. If the court finds any such intent, it shall give it effect. See id. Second, "if no affirmative intent either to authorize or to withhold a damages remedy is found, the court shall undertake the 'constitutional tort' analysis adopted in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388–398 (1971), and its progeny." See id. "Among the relevant factors in this analysis are whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." See id. If the court finds that the factors militate against recognizing the constitutional tort, the inquiry ends. See id. If the factors favor recognizing a constitutional tort, the court shall also consider the existence

13

of any special factors counseling hesitation in recognizing a damages action, including "deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." Id.

As in Estate of Sanchez, the defendants here have made no effort to engage in the Katzberg analysis in their motion to dismiss. Instead, they merely point to two district court opinions which held, without engaging in any Katzberg analysis, that Article I, Section 13 of the California Constitution does not confer a private right of action for damages. See Victoria v. City of San Diego, 326 F. Supp. 3d 1003, 1020-21 (S.D. Cal. 2018); Elliott v. Solis, No. 1:17-cv-01214-LJO-SAB, 2017 WL 4811747, at *7 (E.D. Cal. Oct. 24, 2017). In their reply, defendants again refuse to meaningfully engage in the Katzberg analysis. (See Docket No. 14 at 8.)

Defendants bear the burden of persuasion on their motion to dismiss and have failed to carry it here. See Welchen v. Cnty. of Sacramento, No. 2:16-cv-TLN-KJN, 2016 WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016) ("[S]ince it is defendants' burden at the motion to dismiss juncture, the court cannot find that defendants' motion is meritorious.") Given the lack of a Katzberg analysis by defendants and the early stage of these proceedings, the court is not inclined to foreclose this cause of action at this time. The court will accordingly deny defendants' motion to dismiss plaintiff's fifth cause of action under Article I, Section 13 of the California Constitution.

IT IS THEREFORE ORDERED that the defendants' motion to

14

dismiss plaintiff's second cause of action under <u>Monell</u>, (Docket No. 11), be, and the same hereby is, GRANTED.  Defendants' motion to dismiss plaintiff's first cause of action for violation of the First Amendment under 42 U.S.C. § 1983 and fifth cause of action for violation of Article 1, § 13 of the California Constitution is DENIED.

Plaintiff has twenty days from the date this Order is signed to file an amended complaint if she can do so consistent with this Order.

IT IS SO ORDERED.

Dated:  June 30, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15