1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12   THERESE L. LESHER,                No. 2:21-cv-00386 WBS DMC

13              Plaintiff,

14      v.                             MEMORANDUM AND ORDER RE:
                                       MOTION TO DISMISS
15   CITY OF ANDERSON, a municipal
     corporation; CITY OF ANDERSON
16   POLICE SERGEANT SEAN MILLER,
     individually; CITY OF ANDERSON
17   POLICE OFFICERS JEFFREY MILEY,
     individually, and KAMERON LEE,
18   individually, and DOES 1-50,
     jointly and severally,
19
                Defendants.
20

21

22                            ----oo0oo----

23          Plaintiff Therese Lesher ("plaintiff") brought this

24   action against the City of Anderson ("Anderson" or "City"),

25   Anderson Police Sergeant Sean Miller, Anderson Police Officers

26   Jeffrey Miley and Kameron Lee, and DOES 1-50 seeking damages for

27   violation of the First, Fourth, and Fourteenth Amendments under

28   42 U.S.C. § 1983; municipal and supervisory liability under 42

                                     1

1  U.S.C. § 1983; violation of the Tom Bane Civil Rights Act, Cal.

2  Civil Code § 52.1; malicious prosecution; violation of Article 1,

3  § 13 of the California Constitution; assault and battery; false

4  arrest and imprisonment; and negligence.  (See Second Am. Compl.

5  ("SAC") (Docket No. 28).)

6          The City of Anderson now moves to dismiss the fourth

7  cause of action of the SAC for municipal liability under 42

8  U.S.C. § 1983.  (See Mot. to Dismiss (Docket No. 29).)

9  I.   Factual and Procedural Background

10         On or about August 13, 2019, at approximately 12:30

11  a.m., plaintiff was sitting on the porch of her apartment

12  building talking with her cousin, Denhene Leach, and two other

13  persons, accompanied by Leach's dog.  (See SAC at ¶ 17.)  Several

14  Anderson Police Department ("APD") vehicles pulled into the

15  parking lot in front of the building without lights or sirens.

16  (See id. at ¶ 18.)  Unbeknownst to plaintiff and her group,

17  another tenant of the apartment complex had called in a noise

18  complaint to the APD.  (See id.)  Leach's dog left the porch and

19  walked in the direction of the officers, who had exited their

20  vehicles.  (See id. at ¶ 19.)  Suddenly, one of the officers

21  yelled that he had allegedly been bitten by Leach's dog.  (See

22  id.)  The dog was then retrieved and taken into Leach's

23  apartment.  (See id.)

24         Plaintiff's dog, which was locked in her vehicle, began

25  barking.  (See id. at ¶ 20.)  Plaintiff went to her car to calm

26  down her dog and ensure that it stayed in her vehicle.  (See id.)

27  As plaintiff approached her vehicle, defendant officer Miley

28  yelled for her to control her dog.  (See id.)  He told her that

1   he would pepper spray the dog or shoot it if plaintiff did not

2   control the dog's barking.  (See id.)  In response, plaintiff

3   reached into the partially open rear window of the vehicle and

4   grabbed hold of her dog's harness.  (See id.)

5       Plaintiff disapproved of the way the officers were

6   performing their duties in their interactions with her and Leach.

7   (See id. at ¶ 21.)  Accordingly, she criticized defendants,

8   including Miley and Miller, and expressed her disapproval of the

9   way they were conducting themselves.  (See id.)  Without warning,

10  plaintiff was then thrown against the side of her vehicle,

11  subjected to various uses of force, and handcuffed by defendants

12  Miller, Miley, and Lee.  (See id. at ¶ 22.)

13      Plaintiff was searched and arrested, and her personal

14  property was removed from her person.  (See id.)  She was

15  transported to the Shasta County Jail and booked by defendants

16  for alleged violations of California Penal Code sections 69

17  (using threats or violence to prevent executive officers from

18  performing their duties or resisting executive officers in the

19  performance of their duties), 647(f) (being so intoxicated in a

20  public place that one is unable to care for their own safety or

21  the safety of others), and 148(a)(1) (resisting, delaying, or

22  obstructing a law enforcement officer).  (See id.)  Plaintiff

23  contends that she was cooperative, spoke calmly, and obeyed the

24  officers' commands at all material times.  (See id.)  She

25  sustained an injury to her left forearm, fractures to her

26  clavicle and left finger, and property damage.  (See id. at

27  ¶¶ 26, 29.)

28      Based on the arrest, plaintiff was criminally

3

1   prosecuted in Shasta County, California, for three misdemeanor

2   counts of violation of Penal Code section 148(a)(1).  (See id. at

3   ¶ 23.)  Plaintiff alleges that defendants Miller, Lee, and Miley

4   deliberately and knowingly misrepresented the facts of the

5   incident and her behavior when reporting the incident, leading to

6   her prosecution, and continued to do so up to and during trial.

7   (See id.)  She alleges they did so, and that these

8   misrepresentations were provided to the Shasta County District

9   Attorney's Office, to make plaintiff defend herself against

10  criminal charges the officers knew were illegitimate and to cover

11  up their own criminal acts and abuse of authority.  (See id. at

12  ¶ 24.)

13          On September 24, 2020, plaintiff was acquitted on all

14  three counts after a jury trial.  (See id. at ¶ 25.)  Plaintiff

15  alleges that in addition to her injuries and property damage,

16  defendants' conduct also caused her to lose income and to have to

17  pay bail and attorneys' fees.  (See id. at ¶ 29.)

18          Plaintiff filed the instant action in this court on

19  March 2, 2021.  (See Docket No. 1.)  On June 30, 2021, the court

20  granted defendants' motion to dismiss plaintiff's § 1983 claim

21  for municipal liability against the City.  (See Docket No. 19.)

22  Plaintiff filed a First Amended Complaint on July 20, 2021,

23  (Docket No. 20), and, per the parties' stipulation, a Second

24  Amended Complaint on September 5, 2021, (Docket No. 28).

25  II.  Discussion

26          Federal Rule of Civil Procedure 12(b)(6) allows for

27  dismissal when a complaint fails to state a claim upon which

28  relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  "A Rule

4

1  12(b)(6) motion tests the legal sufficiency of a claim." Navarro

2  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding such a

3  motion, all material allegations of the complaint are accepted as

4  true, as well as all reasonable inferences to be drawn from them.

5  Id.

6          Dismissal is proper where a complaint fails to allege

7  "sufficient facts . . . to support a cognizable legal theory,"

8  id., or to state "a claim to relief that is plausible on its

9  face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A

10  claim has facial plausibility when the plaintiff pleads factual

11  content that allows the court to draw the reasonable inference

12  that the defendant is liable for the misconduct alleged."

13  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare

14  recitals of the elements of a cause of action, supported by mere

15  conclusory statements, do not suffice."  Id.  Although legal

16  conclusions "can provide the framework of a complaint, they must

17  be supported by factual allegations."  Id. at 679.

18          Because 42 U.S.C. § 1983 does not provide for vicarious

19  liability, a local government "may not be sued under § 1983 for

20  an injury inflicted solely by its employees or agents."  Monell

21  v. Dep't of Social Servs. of the City of N.Y., 436 U.S. 658, 694

22  (1978).  "Instead, it is when execution of a government's policy

23  or custom, whether made by its lawmakers or by those whose edicts

24  or acts may be fairly said to represent official policy, inflicts

25  the injury that the government as an entity is responsible under

26  § 1983."  Id.  Here, plaintiff seeks to establish municipal

27  liability on the part of the City for (1) having an

28  unconstitutional custom or policy, (2) ratifying the decisions of

1    the police officers who caused the constitutional violations, and
2    (3) failing to adequately train its police officers.  (SAC at ¶¶
3    51-60 (Docket No. 28).)

4                    A.   Unconstitutional Custom or Policy

5                    To establish Monell liability based upon an
6    unconstitutional custom or policy, a plaintiff must prove "the
7    existence of a widespread practice that, although not authorized
8    by written law or express municipal policy, is 'so permanent and
9    well settled as to constitute a custom or usage with the force of
10   law.'"  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)
11   (plurality opinion) (quoting Adickes v. S.H. Kress & Co., 398
12   U.S. 144, 167-68 (1970)).

13                   At the motion to dismiss stage, a plaintiff must do
14   more than simply allege that a Monell defendant "maintained or
15   permitted an official policy, custom, or practice of knowingly
16   permitting the occurrence of the type of wrongs" alleged
17   elsewhere in the complaint.  Rather, the complaint must allege
18   "additional facts regarding the specific nature of that alleged
19   policy, custom[,] or practice."  See AE ex rel. Hernandez v.
20   Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

21                   It is unclear from the SAC exactly what practice or
22   practices plaintiff relies upon to establish an unconstitutional
23   custom or policy causally related to the conduct which is the
24   subject of this case.  See Bd. of Cnty. Comm'rs of Bryan Cnty. v.
25   Brown, 520 U.S. 397, 406 (1997) (holding that a Monell claim lies
26   where "the municipal action was taken with the requisite degree
27   of culpability and must demonstrate a direct causal link between
28   the municipal action and the deprivation of federal rights").

                                    6

1    The SAC lists, in shotgun fashion, ten so-called

2 "customs, policies, practices, and/or procedures" upon which

3 plaintiff's Monell claim is based. (See SAC at ¶ 52 (Docket No.

4 28).)[1]  Each of these is couched in broad terms, such as

5 "[f]ailure to supervise and/or discipline officers for misconduct

6 that results in the violation of citizens' civil rights," or

7 "[u]sing or tolerating inadequate, deficient, and/or improper

8 procedures for handling, investigating, and reviewing complaints

9 of officer misconduct." (Id.)  If such generalized descriptions

10 were deemed sufficient, a plaintiff would be able to survive a

11 motion to dismiss a Monell claim in just about every excessive

12 force case under § 1983.

13    Even where the policy or custom is adequately specified

14 in the complaint, the plaintiff also "must ordinarily point to a

15 pattern of prior, similar violations of federally protected

16 rights, of which the relevant policymakers had actual or

17 constructive notice." Hyun Ju Park v. City & Cnty. of Honolulu,

18 952 F.3d 1136, 1142 (9th Cir. 2020) (citing Connick v. Thompson,

19 563 U.S. 51, 62 (2011); Clouthier v. Cnty. of Contra Costa, 591

20 F.3d 1232, 1253 (9th Cir. 2010)); see, e.g., Perryman v. City of

---

21    [1]    In all respects pertinent to plaintiff's unlawful
22 policy or custom theory, these allegations are identical to those
   in plaintiff's original complaint.  (Compare Compl. at ¶ 41
23 (Docket No. 1) with SAC at ¶ 52 (Docket No. 28).)  In its Order
   granting in part defendants' motion to dismiss that complaint,
24 the court held that because plaintiff had "merely allege[d] that
   the defendant has a policy or custom of performing various wrongs
25 alleged elsewhere in her complaint," she failed to adequately
   plead a Monell claim.  (Docket No. 19 at 9-10 (citing AE ex. rel.
26 Hernandez, 666 F.3d at 637; Bagley v. City of Sunnyvale, 16-cv-
   02250 LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017);
27 Mendy v. City of Fremont, 13-cv-4180 MMC, 2014 WL 574599, at *3
   (N.D. Cal. Feb. 12, 2014)).)
28

7

1  Pittsburg, -- F. Supp. 3d --, 2021 WL 493396, at *3 (N.D. Cal.

2  Feb. 10, 2021) (considering prior incidents in deciding whether

3  Monell complaint adequately identified pattern of past

4  violations); Hughey v. Drummond, 2:14-cv-00037 TLN AC, 2017 WL

5  590265, at *6 (E.D. Cal. Feb. 14, 2017) (same); see also Bagley

6  v. City of Sunnyvale, 16-cv-02250 LHK, 2017 WL 344998, at *15

7  (N.D. Cal. Jan. 24, 2017) (granting motion to dismiss Monell

8  claim because plaintiff failed to "allege any facts that indicate

9  that the [city's] police force is regularly taking actions

10  involving excessive force or unlawful arrests" and instead "only

11  [pled] actions related to his own arrest and prosecution").

12       In an attempt to show a pattern of prior, similar

13  violations of federally protected rights of which the City

14  policymakers had actual or constructive notice, plaintiff

15  identifies four other lawsuits against Anderson and APD officers.

16  (See SAC at ¶ 57 (Docket No. 28) (citing Haught v. City of

17  Anderson, et al., 2:11-cv-1653 JAM CKD (E.D. Cal. 2011); Knighten

18  v. City of Anderson, et al., 2:15-cv-1751 TLN CMK (E.D. Cal.

19  2015); McMillan v. County of Shasta, et al., 2:20-cv-00564 JAM

20  EFB (E.D. Cal. 2020); Rawlins v. City of Anderson, et. al., 2:21-

21  cv-00567 TLN DMC (E.D. Cal. 2021)).)[2]

22       To determine whether this history of previous lawsuits

23  is sufficient to plausibly allege a municipal policy, custom or

24  practice at the pleading stage, the court considers all of the

25       [2]   Defendant City requests that the court take judicial
26  notice of the docket and papers filed in the four cases plaintiff
   identifies in her Second Amended Complaint.  (See Req. for Jud.
27  Notice (Docket No. 29-2).)  Plaintiff has not opposed that
   request.  (See Opp. to Mot. (Docket No. 34).)  Accordingly, the
28  City's request is granted.

1   relevant factors, including (1) the number of prior lawsuits; (2)

2   the allegations in those lawsuits, including the degree of

3   similarity between the facts alleged in the prior lawsuits and

4   the facts alleged in the action under consideration; (3) the

5   timing of the prior lawsuits; (4) the disposition of the prior

6   lawsuits; (5) the number and identity of defendants in the prior

7   lawsuits, including whether the municipality itself was a

8   defendant and whether any of the defendants in the prior lawsuits

9   were the same as the defendants in the case under consideration;

10  and (6) the size of the municipality in relation to the number

11  and type of lawsuits.

12          Here, the previous cases in which APD officers were

13  alleged to have committed § 1983 violations were all relatively

14  recent, having been filed in the last ten years, and the although

15  the size of the APD is not alleged in the SAC, the court can take

16  judicial notice that Anderson is a relatively small city in

17  Shasta County, California, with a population of a little over

18  10,000.  With regard to the number of prior cases, while the

19  Ninth Circuit has suggested that one or two prior similar

20  incidents, standing alone, are generally insufficient to prove

21  the existence of an unconstitutional custom or practice,[3] the law

22  does not establish a precise number of previous lawsuits which

23  must be alleged to overcome a motion to dismiss.  See Gonzalez v.

24  Cnty. of Merced, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017)

25  (O'Neill, J.) (observing same); (see also Mot. at 7-8 (Docket No.

26          [3]   See, e.g., Davis v. City of Ellensburg, 869 F.2d 1230,
27  1235 (9th Cir. 1989) (one incident cannot establish a practice);
    Meehan v. Cnty. of Los Angeles, 856 F.2d 102, 107 (9th Cir. 1988)
28  (two incidents cannot establish a custom).

1   29-1) (contending that the four prior incidents identified by

2   plaintiff in her Second Amended Complaint put it into a

3   precedential "grey area")).

4           Accordingly, to determine whether the existence of

5   these previous lawsuits is sufficient to establish a pattern of

6   prior, similar violations of federally protected rights, of which

7   the relevant policymakers had actual or constructive notice, the

8   court must look to the other relevant factors, including the

9   similarity of the allegations in the prior cases to the

10  allegations in this case, the defendants in the prior cases, and

11  the disposition of those cases.

12          The most similar of the prior cited cases is <u>Knighten</u>,

13  in which defendant Miller in the instant case was alleged to have

14  reached into the plaintiff's car window, pulled him against the

15  inside of the car door, twisted his arm, and slammed him against

16  Miller's vehicle before informing the man he was under arrest for

17  making a "door ding" on Miller's vehicle.  (<u>See</u> SAC at ¶ 57

18  (citing 2:15-cv-01751 TLN CMK, Docket No. 21 at ¶¶ 3, 6-8).)[4]

19          <u>Haught</u>, however, bears no similarity whatsoever to the

20  present case.  There, the plaintiff, who had already been

21

22          [4]   In her Second Amended Complaint, plaintiff notes
    that the court in <u>Knighten</u> also identified several other
23  complaints for alleged uses of excessive force by Miller.  (<u>See</u>
    SAC at ¶ 57 (citing <u>Knighten</u>, 2:15-cv-01751 TLN CMK) (Docket No.
24  28).)  However, because the nature and circumstances of those
    uses of force are not apparent, the court cannot conclude that
25  they are sufficiently similar to the uses of excessive force
    alleged here.  Moreover, while prior unlawful acts of Miller, if
26  they were sufficiently similar to the conduct alleged in this
    case, might be relevant to show a common practice on his part,
27  they would do little to establish a department-wide practice in
28  order to support <u>Monell</u> liability.

                                10

1   arrested, alleged she was subsequently driven to a remote

2   location and raped.  (See id. (citing 2:11-cv-01653 JAM CMK).)

3   Similarly, the allegations in McMillian bear little resemblance

4   to the facts alleged here.  There, the plaintiff alleged he was

5   arrested, that he was placed in handcuffs that were too tight and

6   placed into a patrol car, that the officer threatened to slam the

7   car door on him, and that the officer shoved his legs inside of

8   the car before closing the door.  (See id. (citing 2:20-cv-00564

9   JAM EFB, Docket No. 43 at ¶¶ 20-27, 29, 92).)  And in Rawlins,

10  the plaintiff alleged an officer instructed her to move her

11  vehicle, and when she checked her child's car seat before doing

12  so, the officer reached into her vehicle, grabbed and twisted her

13  arm, and handcuffed and arrested her.  (See id. (citing 2:21-cv-

14  00567 TLN DMC, Docket No. 1 at ¶ 18).)

15          With the possible exception of Knighten, the manner of

16  arrest and use of force in the other referenced cases, except for

17  the fact that a car was in some way involved, do not resemble

18  those alleged here, and thus do not plausibly suggest an unlawful

19  policy or custom of excessive force or false arrest.  Nor do

20  those cases support, with the possible exception of McMillian,

21  the existence of the alleged unlawful policies or customs of

22  retaliatory arrest or "hurt a person – charge a person."  One

23  similar prior incident does not plausibly suggest the existence

24  of "a widespread practice . . . so permanent and well settled as

25  to constitute a custom or usage with the force of law."

26  Praprotnik, 485 U.S. at 127 (citation and quotation marks

27  omitted).  "[R]andom acts" or "isolated or sporadic incidents"

28  are insufficient to prove the existence of an unconstitutional

11

1    custom or practice.  Navarro v. Block, 72 F.3d 712, 714 (9th Cir.

2    1995); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

3    Rather, the plaintiff must prove that the custom or practice in

4    question has "sufficient duration, frequency[,] and consistency

5    that [it] has become a traditional method of carrying out

6    policy."  Trevino, 99 F.3d at 918.

7         Finally, at oral argument on the motion, counsel

8    represented to the court that none of the four referenced cases

9    went to judgment.  It was represented that two of them settled,

10   and the other two were still pending.  Settlement of a lawsuit

11   does not establish the truth of the plaintiff's allegations, and

12   without a judgment against the defendants, the allegations of a

13   complaint are little more than unproven allegations.

14        For the foregoing reasons, the court concludes that

15   plaintiff has failed to state a claim for Monell liability based

16   on unlawful policy or custom.

17        B.   Ratification

18        The Ninth Circuit has "found municipal liability on the

19   basis of ratification when the officials involved adopted and

20   expressly approved of the acts of others who caused the

21   constitutional violation."  Trevino, 99 F.3d at 920.  To show

22   ratification, a plaintiff must demonstrate that the

23   municipality's "authorized policymakers approve[d] a

24   subordinate's decision and the basis for it."  Christie v. Iopa,

25   176 F.3d 1231, 1239 (9th Cir. 1999) (quoting Praprotnik, 485 U.S.

26   at 127).  "Ratification . . . generally requires more than

27   acquiescence"; policymakers must "ma[k]e a deliberate choice to

28   endorse the officer[']s[ ] actions."  Sheehan v. City & Cnty. of

1    San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014) (internal

2    quotation marks omitted), rev'd in part on other grounds, 575

3    U.S. 600, 610-17 (2015).

4            In its previous order, the court held that plaintiff's

5    original complaint failed to state a Monell claim under a

6    ratification theory.  (See Docket No. 19 at 10-11.)  It did so

7    because the complaint included only "conclusory pleading" in

8    support of ratification, rather than "any factual allegations

9    regarding any approval or ratification by Anderson . . . or the

10   basis for such approval."  (See id.)

11           Plaintiff's new allegations in support of her

12   ratification claim appear to consist solely of her references to

13   the prior lawsuits, which include allegations of excessive force

14   and false arrest against defendants Miller and Lee, arguing that

15   their continued employment by Anderson despite being named in

16   those lawsuits "emboldened Defendants Miller and Lee to continue

17   to commit violations without fearing discipline, demotion, or

18   termination."  (See SAC at ¶ 58 (Docket No. 28).)  Plaintiff also

19   points to the allegation in Knighten that Miller was promoted to

20   Sergeant and given a pay raise after the incident at issue in

21   that case.  (See id.)

22           However, plaintiff has not provided any factual

23   allegations identifying any authorized policymakers who approved

24   the officers' actions and the basis for such approval.  See

25   Christie, 176 F.3d at 1239.  Such conclusory pleading, absent any

26   supporting factual allegations, does not sufficiently state a

27   Monell claim.  See Hicks v. Cnty. of Stanislaus, 1:17-cv-01187

28   LJO SAB, 2018 WL 347790, at *6 (E.D. Cal. Jan. 10, 2018)

1   (dismissing ratification claim where complaint contained no

2   factual allegations to support claim that defendant county

3   "approved, ratified, condoned, encourage, sought to cover up,

4   and/or tacitly authorized" conduct of police unit).  Plaintiff

5   has therefore failed to state a cognizable claim of ratification

6   under Monell.

7            C.   Failure to Train

8            To state a claim for failure to train under Monell, a

9   plaintiff must show that (1) the existing training program is

10  inadequate "in relation to the tasks the particular officers must

11  perform"; (2) the relevant officials were "deliberate[ly]

12  indifferen[t] to the rights of persons with whom the police come

13  into contact"; and (3) the inadequacy of the training "'actually

14  caused' a deprivation of [the plaintiff's] constitutional

15  rights." Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 770 (9th

16  Cir. 1989) (quoting City of Canton v. Harris, 489 U.S. 378, 388,

17  390-91 (1989)).

18           In her opposition, plaintiff contends that the Second

19  Amended Complaint adequately states a Monell claim based on

20  failure to train "for the same reasons as . . . with respect to

21  Plaintiff's policy, custom, or practice Monell claim."  (Opp. to

22  Mot. at 25-26 (Docket No. 34).)  However, as the court has

23  already concluded, plaintiff has not adequately stated a Monell

24  claim based on unlawful policy or custom.

25           Further, the Second Amended Complaint contains hardly

26  any references to the City's training programs or alleged

27  deficiencies therein, and plaintiff does not explain how the

28  alleged unconstitutional policies or customs addressed above

                                  14

1  necessarily also evince a lack of training.  Indeed, since her

2  original complaint, plaintiff appears to have removed most of her

3  complaint's references to "training."  (Compare, e.g., Compl. at

4  ¶¶ 42, 47 (Docket No. 1) (alleging City "fail[ed] to properly

5  . . . hire, train, instruct, monitor, supervise, evaluate,

6  investigate, and discipline" defendant officers) (emphasis added)

7  with SAC at ¶¶ 53, 59 (Docket No. 28) (alleging City "fail[ed] to

8  properly . . . monitor, supervise, evaluate, investigate, and

9  discipline" defendant officers).)

10          Plaintiff has provided no factual allegations as to (1)

11  how Anderson's officer training is inadequate, (2) how the

12  relevant officials have been deliberately indifferent to the

13  rights of Anderson citizens, or (3) how the inadequacy of the

14  training actually caused the alleged deprivation of plaintiff's

15  constitutional rights.  See Merritt, 875 F.2d at 770.  In fact,

16  plaintiff has provided no factual allegations whatsoever

17  regarding the Anderson officer training program.  (See SAC

18  (Docket No. 28).)  Accordingly, plaintiff has failed to state a

19  cognizable claim of failure to train under Monell.

20          For the reasons stated, plaintiff has failed to state a

21  claim for municipal liability under Monell based on failure to

22  train.

23  III. Conclusion

24          For all of the foregoing reasons, the court concludes

25  that the fourth cause of action of the SAC fails to state a claim

26  against the City of Anderson for municipal liability under 42

27  U.S.C. § 1983.

28          Counsel for plaintiff has suggested that plaintiff be

1    allowed to proceed on the bare-bones generalized allegations in

2    the SAC at least until she has had the opportunity to conduct

3    some limited discovery to develop facts to support her Monell

4    claim.  There are sound reasons why the law does not permit a

5    plaintiff to do that.  Particularly given the current the state

6    of the economy, a city of the size and location of Anderson

7    understandably has limited resources.  Before a plaintiff may be

8    permitted to tap into those resources to require responses to the

9    kind of discovery requests which could be expected in order to

10   develop a direct claim against the City, the law requires the

11   plaintiff to come forward with something of more substance and

12   specificity than the kind of generalized conclusions and

13   speculation in plaintiff's SAC.  And because plaintiff has unable

14   to state a viable claim under Monell after multiple rounds of

15   amendment to the complaint, the court declines to grant further

16   leave to amend.

17          IT IS THEREFORE ORDERED that defendants' motion to

18   dismiss plaintiff's fourth cause of action, alleging municipal

19   liability under § 1983, be, and the same hereby is, GRANTED.

20   Dated:   December 2, 2021

         WILLIAM B. SHUBB
         UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                  16