1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12    THERESE L. LESHER,                    No. 2:21-cv-00386 WBS DMC

13              Plaintiff,

14         v.                               MEMORANDUM AND ORDER RE:
                                            DEFENDANTS' MOTION FOR
15    CITY OF ANDERSON, a municipal         PARTIAL SUMMARY JUDGMENT
      corporation; City of Anderson
16    Police Sergeant SEAN MILLER,
      individually; City of Anderson
17    Police Officers JEFFREY MILEY,
      individually, and KAMERON LEE,
18    individually; and, DOES 1
      through 50, jointly and
19    severally,

20              Defendants.

21

22                          ----oo0oo----

23         Plaintiff Therese Lesher initiated this action against

24    defendants City of Anderson, Sergeant Sean Miller, and Officers

25    Jeffrey Miley and Kameron Lee, alleging violations of the United

26    States Constitution and state law.  (Docket No. 28.)  Defendants

27    now seek summary judgment on plaintiff's first claim for First

28    Amendment retaliation under 42 U.S.C. § 1983; third claim for

                                    1

1  Fourth Amendment malicious prosecution under § 1983; sixth claim

2  for malicious prosecution under California law; and seventh claim

3  for violation of due process under Article I § 13 of the

4  California Constitution.

5  I.    Background

6          On August 30, 2019, plaintiff and several of her family

7  members were having a social gathering in the parking lot outside

8  the building where plaintiff's cousin, Denhene Leach, lived.

9  (See Lesher Decl. (Docket No. 83-13) ¶ 3.)  The defendant

10 officers were dispatched to the gathering in response to a noise

11 complaint.  (Defs.' Statement of Undisputed Facts ("SUF") (Docket

12 No. 76-2) ¶ 2.)

13         Upon the officers' arrival, a dog belonging to Ms.

14 Leach ran towards the officers.  (Lesher Decl. ¶ 4.)  Officer Lee

15 stated that the dog bit him.  (See Dumlao Dep. at 12:4-6; Lee

16 Dep. at 26:19-21.)  Plaintiff's dog was also nearby, situated in

17 a vehicle with the passenger side window open.  (See Lesher Decl.

18 ¶ 4.)  The officers instructed plaintiff and Ms. Leach to

19 restrain the dogs.  (See Lee Dep. at 22:3-9; Lesher Dep. at

20 78:23-79:7.)  Plaintiff reached through the car window and held

21 onto her dog.  (See Dumlao Dep. at 12:18-19; Lee Dep. at 35:19-

22 23; Lesher Dep. at 79:3-4.)  Following a verbal interaction with

23 one or more of the officers, the defendant officers arrested

24 plaintiff.  (See SUF ¶ 2; Dumlao Dep. at 19:24-20:4, 20:24-21:7;

25 Lesher Dep. at 80:16-81:25; Miley Dep. at 84:8-14.)

26         Plaintiff was charged with resisting and delaying a

27 peace officer.  (SUF ¶ 3.)  The prosecutor made the decision to

28 prosecute plaintiff based on her review of the officers' reports,

1  a probable cause statement prepared by Lee, and her legal

2  research.  (Id. ¶ 4.)  Plaintiff was acquitted following a trial.

3  (Id. ¶ 6.)

4  II.  Federal Claims

5       A.   First Amendment Retaliation

6            Plaintiff's first claim alleges that defendants engaged

7  in a retaliatory arrest in violation of her First Amendment

8  rights.  "The First Amendment prohibits government officials from

9  subjecting an individual to retaliatory actions for engaging in

10 protected speech."  Nieves v. Bartlett, 139 S. Ct. 1715, 1722

11 (2019) (cleaned up).  To recover under § 1983 for First Amendment

12 retaliation, a plaintiff must prove: "(1) he engaged in

13 constitutionally protected activity; (2) as a result, he was

14 subjected to adverse action by the defendant that would chill a

15 person of ordinary firmness from continuing to engage in the

16 protected activity; and (3) there was a substantial causal

17 relationship between the constitutionally protected activity and

18 the adverse action."  Ballentine v. Tucker, 28 F.4th 54, 61 (9th

19 Cir. 2022) (quoting Blair v. Bethel Sch. Dist., 608 F.3d 540, 543

20 (9th Cir. 2010)).

21           Plaintiff's retaliation claim fails because, under the

22 evidence she relies upon, she "cannot show that retaliatory

23 animus was a substantial factor behind h[er] arrest."  See Hill

24 v. City of Fountain Valley, 70 F.4th 507, 519 (9th Cir. 2023).

25 According to plaintiff, prior to her arrest she calmly asked,

26 "Why are you doing this?"  (See Lesher Dep. at 80:16-81:25;

27 Lesher Decl. ¶ 4; Dumlao Dep. at 31:15-25, 55:20-56:9, 61:6-23,

28 64:20-25.)  As the Ninth Circuit observed in Hill, "[i]t seems

1  dubious that the officers would be upset" based on such a "benign
2  statement[]," as "law enforcement officers are routinely
3  subjected to much more vitriolic rhetoric."  See Hill, 70 F.4th
4  at 519.  Plaintiff offers no evidence suggesting her unremarkable
5  question angered the officers or otherwise caused her arrest.  To
6  the contrary, the evidence indicates that plaintiff was facing
7  the officer she spoke to and was then arrested by a different
8  officer positioned behind her.  (See Dumlao Dep. at 65:19-68:3;
9  Lesher Dep. at 80:16-81:1; Lesher Decl. ¶ 4.)

10       To permit the finding of a First Amendment violation
11  from the bare fact that plaintiff was arrested after expressing
12  verbal disagreement would open the door to allowing a First
13  Amendment retaliation claim under § 1983 for every arrest in
14  which there is a verbal conflict between officer and arrestee.
15  The facts relied upon by plaintiff may more properly form the
16  basis for her § 1983 claim under the Fourth Amendment's
17  prohibition against unreasonable seizures.  This ruling does not
18  affect plaintiff's second claim brought under that amendment.

19       Accordingly, the court will grant summary judgment in
20  defendants' favor on plaintiff's first claim.

21       B.   Fourth Amendment Malicious Prosecution

22       Plaintiff's third claim alleges malicious prosecution
23  and fabrication of evidence under the Fourth and Fourteenth
24  Amendments.  Defendants' motion addresses only the malicious
25  prosecution theory, which is appropriately brought under the
26  Fourth Amendment.  See Thompson v. Clark, 596 U.S. 36, 39 (2022).
27       There is a presumption that a prosecutor "exercised
28  independent judgment in determining that probable cause for an

4

1  accused's arrest exists," thereby immunizing the investigating
2  officers from liability premised on a prosecutor's filing of a
3  criminal complaint.  <u>Newman v. County of Orange</u>, 457 F.3d 991,
4  993 (9th Cir. 2006).  The plaintiff may overcome this presumption
5  by presenting evidence that the officers "interfered with the
6  prosecutor's judgment in some way, by omitting relevant
7  information, by including false information, or by pressuring the
8  prosecutor to file charges."  <u>Id.</u> at 995.  Defendants argue that
9  plaintiff cannot overcome the presumption of independent
10  judgment.

11        There are substantial discrepancies between the
12  parties' accounts of what occurred during the incident in
13  question.  The officer defendants represent that plaintiff was
14  intoxicated and slurring her words, shouted insults at the
15  officers, and refused to comply with their commands, leading them
16  to arrest her.  (<u>See</u> Lee Dep. at 29:13-22, 30:19-21; Miley Dep.
17  at 84:20-92:4, 92:13-25, 96:16; Miller Dep. at 24:11-25:7, 29:11-
18  23, 46:2-7.)  Plaintiff and the witnesses proffered by plaintiff
19  represent that she was not intoxicated or slurring her words, was
20  not shouting or behaving belligerently prior to her arrest,
21  complied with the officers' commands to the extent commands were
22  given, and was handcuffed and slammed into her vehicle without
23  justification following plaintiff's questioning of the officers'
24  actions, leaving a dent in the car and injuring plaintiff.  (<u>See</u>
25  Dumlao Dep. at 10:22-25, 16:13-17:23, 22:4-21, 23:23-24, 28:2-5,
26  31:15-19, 38:3-10, 52:25-53:3, 63:8-12; Leach Dep. at 76:12-21;
27  Lesher Dep. at 87:15-89:17, 92:3-97:13, 107:14-108:6, 111:22-24;
28  <u>see also</u> Lee Dep. at 55:10-20; Miley Dep. at 93:11-94:16, 118:5-

1  12.)

2          Given the parties' differing accounts of the events,

3  there is a genuine dispute of material fact precluding summary

4  judgment.  A trier of fact could conclude that plaintiff's

5  account -- which is supported by eyewitness testimony -- is

6  accurate and thus the police reports the prosecutor relied upon

7  omitted relevant information or were false, which could overcome

8  the presumption of independent judgment.  See Newman, 457 F.3d at

9  994-95 (indicating a plaintiff can overcome the presumption of

10  independent judgment using evidence that police reports "omitted

11  critical information" so long as plaintiff offers more than her

12  own testimony, for instance eyewitness testimony contradicting

13  the reports).  Accordingly, summary judgment on the third claim

14  for malicious prosecution will be denied.

15  III. State Claims

16          A.    Malicious Prosecution

17          Plaintiff concedes that her sixth claim for malicious

18  prosecution under California law is barred by California

19  Government Code § 821.6.  Accordingly, summary judgment in favor

20  of defendants will be granted on plaintiff's sixth claim.

21          B.    Due Process

22          Plaintiff's seventh claim alleges violation of due

23  process under Article I § 13 of the California Constitution,

24  which protects against unreasonable searches and seizures.  The

25  California Supreme Court has not decided whether there is a

26  private cause of action for damages under this provision, nor

27  have the California appellate courts or the Ninth Circuit

28  considered the issue.  See Temple v. Placer Cnty. Sheriff's Off.,

1 No. 2:23-cv-01713 DAD CKD, 2024 WL 3742920, at *10 (E.D. Cal.
2 Aug. 9, 2024).

3         In order to determine whether a provision of the
4 California Constitution establishes a private right of action,
5 courts engage in the two-step analysis set forth by the
6 California Supreme Court in Katzberg v. Regents of the University
7 of California, 29 Cal. 4th 300, 317 (2002).

8         The Katzberg analysis employs a two-step approach.
9 First, the court must "inquire whether there is evidence from
10 which we may find or infer, within the constitutional provision
11 at issue, an affirmative intent either to authorize or to
12 withhold a damages action to remedy a violation." See id.  In
13 undertaking this inquiry, the court "shall consider the language
14 and history of the constitutional provision at issue, including
15 whether it contains guidelines, mechanisms, or procedures
16 implying a monetary remedy, as well as any pertinent common law
17 history." Id.  If the court finds any such intent, it shall give
18 it effect.  Id.

19         Second, "if no affirmative intent either to authorize
20 or to withhold a damages remedy is found, the court shall
21 undertake the 'constitutional tort' analysis adopted in Bivens v.
22 Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), and
23 its progeny." Id.  "Among the relevant factors in this analysis
24 are whether an adequate remedy exists, the extent to which a
25 constitutional tort action would change established tort law, and
26 the nature and significance of the constitutional provision."
27 Id.  If the court finds that the factors militate against
28 recognizing the constitutional tort, the inquiry ends.  Id.  If

1    the factors favor recognizing a constitutional tort, the court

2    shall also consider the existence of any special factors

3    counseling hesitation in recognizing a damages action, including

4    "deference to legislative judgment, avoidance of adverse policy

5    consequences, considerations of government fiscal policy,

6    practical issues of proof, and the competence of courts to assess

7    particular types of damages." Id.

8         Defendants argued in their first motion to dismiss that

9    there is no private right of action under section 13.  The court

10   declined to dismiss the claim under section 13 because defendants

11   did not engage in the Katzberg analysis and therefore did not

12   satisfy their burden.  (Docket No. 19 at 14.)  Here, defendants

13   argue anew that there is no private right of action.  As in their

14   first motion to dismiss, defendants have again completely failed

15   to apply the relevant law, instead stating in conclusory fashion

16   that there is no private right of action under section 13.  (See

17   Docket Nos. 76 at 12, 87 at 11.)

18        However, following the order on the first motion to

19   dismiss in this case, the court addressed this precise issue in

20   Estate of F.R. v. County of Yuba, No. 2:23-cv-00846 WBS CKD, 2023

21   WL 6130049 (E.D. Cal. Sept. 19, 2023).  That decision concluded

22   that there is no private right of action under section 13.

23   Despite the inadequate briefing provided by the parties here, the

24   court sees no reason to depart from its analysis in that case.

25        As the court explained in Estate of F.R., "'[s]ection

26   13 does not mention damages,' and the court is not aware of 'any

27   drafting history, ballot materials, historical records, or common

28   law decisions suggesting section 13 was adopted with an intent to

1   make damages available.'"  Id. at *6 (quoting Rios v. County of
2   Sacramento, 562 F. Supp. 3d 999, 1022-23 (E.D. Cal. 2021)
3   (Mueller, J.)) (collecting cases).  Although some courts have
4   recognized a cause of action under section 13 based on dicta in
5   Katzberg explaining that English common law "'provided a damage
6   remedy for the victims of unlawful searches at common law,'" see,
7   e.g., Brewster v. City of Los Angeles, No. 14-cv-2257 JGB SP,
8   2020 WL 5991621, at *15 (C.D. Cal. July 14, 2020) (quoting
9   (quoting Katzberg, 29 Cal. 4th at 322), this general common law
10  history is not "sufficient evidence of 'affirmative intent' to
11  create a private cause of action, and therefore resort to the
12  second step of the Katzberg analysis is appropriate."  See Est.
13  of F.R., 2023 WL 6130049 at *6.
14          The second step of the analysis -- which incorporates
15  "Bivens and its progeny," see Katzberg, 29 Cal. 4th at 314 -- is
16  simplified by the Supreme Court's decision in Egbert v. Boule,
17  596 U.S. 482 (2022).  The Egbert court explained that given the
18  tension between judicially created causes of action and the
19  separation of powers under the Constitution, as well as Congress'
20  superior position to consider the policy implications of creating
21  a cause of action, "[i]f there are sound reasons to think [the
22  legislative branch] might doubt the efficacy or necessity of a
23  damages remedy, the courts must refrain from creating it."  See
24  id. at 490-91.  "Even a single sound reason to defer to [the
25  legislature] is enough to require a court to refrain from
26  creating such a remedy," and "if there is a rational reason to
27  think that" the legislature should decide whether to provide for
28  a damages remedy, "no Bivens action may lie."  Id. at 491-92.

1    For instance, if the legislature "has provided alternative

2    remedies for aggrieved parties in [the plaintiff's] position," a

3    <u>Bivens</u> action is "foreclose[d]."  <u>See id.</u> at 497.

4          Here, there are "clear reasons to defer creation of a

5    private cause of action under § 13 to the California Legislature.

6    In particular, the Legislature has already undertaken to provide

7    an alternative remedy for constitutional violations, including

8    violations of § 13 -- specifically, the Tom Bane Civil Rights

9    Act."  <u>Est. of F.R.</u>, 2023 WL 6130049 at *6 (collecting cases).

10   Accordingly, there is no private right of action under Article I

11   § 13 of the California Constitution and summary judgment in

12   defendants' favor will be granted on the seventh claim.

13         IT IS THEREFORE ORDERED that defendants' motion for

14   partial summary judgment be, and the same hereby is, GRANTED IN

15   PART as to the first claim for First Amendment retaliation; the

16   sixth claim for malicious prosecution under California law; and

17   the seventh claim for violation of due process under Article I §

18   13 of the California Constitution.  The motion is DENIED as to

19   the third claim for Fourth Amendment malicious prosecution.

20   Dated:  January 22, 2025

21                                  WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28